UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**HINESLEY FAMILY LIMITED PARTNERSHIP NO. 1**,

Debtor.

Case No. **10-61822-7**

# MEMORANDUM of DECISION

At Butte in said District this 13th day of January, 2012.

In this Chapter 7 bankruptcy, after due notice, a hearing was held January 10, 2012, in Butte on approval of the Fee Application for Professional Fees and Costs filed on behalf of Spencer Thunell and Michael Stewart on May 11, 2011, and on approval of the Second and Final Fee Application for Professional Fees and Costs filed on behalf of Spencer Thunell and Michael Stewart on July 22, 2011. The Chapter 7 Trustee, Joseph V. Womack of Billings, Montana, and Debtor's counsel, James A. Patten of Billings, Montana, appeared at the hearing and both indicated their lack of opposition to the pending fee requests.

In the Application filed May 11, 2011, Thunell and Stewart seek approval of consultant fees in the amount of $11,488.75 and expenses in the amount of $3,965.52. In the Second and Final Application filed July 22, 2011, Thunell and Stewart seek approval of fees in the amount of $1,837.50. Both applications are accompanied by notices granting parties-in-interest fourteen

1

(14) days to file a response and request a hearing, and advising that failure to respond shall be deemed an admission that the relief requested in the applications should be granted. No objections have been filed. The U.S. Trustee has not filed a response to either application pursuant to 28 U.S.C. § 586(a)(3)(A).

Notwithstanding the absence of any opposition, this Court has an independent obligation to review each application for compensation to ensure that applicants provide an adequate summary of work performed and costs incurred. Extensive case law has developed regarding the amount and type of information that applicants must include in their fee applications. The case of *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990) summarizes thus:

> Pursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr. Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr. W.D. Okla. 1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr. Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr. S.D. 1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr. N.D. Ill. 1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3)] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939-940 (Bankr. N.D. Ill. 1989) holds:
>
>> Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wildman*, 72 B.R. 700, 731

(Bankr. N.D. Ill. 1987); *In re Marsh*, 14 B.R. 615, 617 (Bankr. E.D. Va. 1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731.

The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to determine whether the applicant provided:

1. a description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;
2. the date each service was provided;
3. the amount of time spent performing each task; and
4. the amount of fees requested for performing each task.

After review of the Applications, and in the absence of any objection after appropriate notice, the Court finds that the Applications provide adequate detail of the fees requested which enables the Court to undertake its independent investigation. However, that does not end the inquiry.

This case was commenced under Chapter 11 of the Bankruptcy Code on July 27, 2010. On February 7, 2011, the Debtor filed an application to employ Spencer Thunell and Michael Stewart of LEP Advisors, LLC as real estate advisors, which application the Court granted that same date. Subsequently, GCL Investments, LLC, West Jordan, LLC and Charles W. Hinesley, Jr. filed objections to Debtor's application to employ Spencer Thunell and Michael Stewart of LEP Advisors, LLC. Following a hearing held March 1, 2011, the Court entered an Order on March 2, 2011, overruling the objections to Debtor's employment of Spencer Thunell and Michael Stewart of LEP Advisors, LLC. The Court's March 2, 2011, ruling was based in part on testimony that Spencer Thunell, Michael Stewart and LEP Advisors, LLC were not direct competitors of the Debtor and were thus, disinterested persons.

Charles Hinesley, Sr. and Morgan Hinesley first testified on March 1, 2011, as to why

Debtor wanted to employ Spencer Thunell and Michael Stewart. Charles Hinesley, Sr. explained that Spencer Thunell and Michael Stewart had a broader view of the market and could assist Debtor with its reorganization efforts. Similarly, Morgan Hinesley testified on March 1, 2011, that Debtor wanted to retain Spencer Thunell and Michael Stewart because they had the ability to bring a polished presentation to the table. Morgan explained that Charles Hinesley, Sr. "has an extremely extensive knowledge and understanding of the real estate market" in Bozeman, and that builders in Bozeman often look to what the Debtor is doing in the housing market and attempt to copy the Debtor. Notwithstanding Charles Hinesley, Sr.'s extensive knowledge, Morgan felt Spencer Thunell and Michael Stewart brought another level of confirmation to what Morgan and Charles Hinesley, Sr. already knew and believed and that their polished presentation and affirmations would help market Debtor's plan to those who would be voting on the plan.

To alleviate concerns that Spencer Thunell and Michael Stewart were competitors of the Debtor, Charles Hinesley, Sr. testified that "LEP" did not compete with the Debtor because LEP typically built 2-story homes with maximum footage of approximately 3,000 square feet. Debtor, on the other hand, built single story homes with maximum footage of approximately 2,000 square feet. Charles Hinesley, Sr. also testified that Debtor generally finished its homes with higher end products. Finally, Hinesley, Sr. testified that LEP and Debtor did not cater to the same demographic groups.

However, Morgan conceded that LEP, like Debtor, was in the business of marketing and selling spec homes in a price range that was similar to the price range in which Debtor was marketing and selling its homes, but denied that Debtor and LEP were competitors, testifying "our product lines do differ significantly." Morgan concluded his testimony that LEP had

approximately 33 single-family lots left to sell in Oak Springs and that by the time Debtor brought its product on line in 2013, LEP would have sold its remaining single-family lots.

Spencer Thunell of Park City, Utah, who serves as Land Equity Partners' Chief Financial Officer and is a founding member of LEP Advisors, LLC, testified that vertical construction was not originally contemplated nor was it part of LEP's business. Thunell testified that home construction was done through a related entity, Sunrise Homes, LLC. Thunell conceded that LEP had developments in the Bozeman area, including Oak Springs located down the road from Debtor's development. Thunell testified that LEP had not built any homes in Oak Springs, but admitted that Sunrise Homes, LLC, an affiliate of LEP, had built homes in Oak Springs. Thunell agreed with Charles Hinesley, Sr. and Morgan that LEP did not finish its homes as nicely as Debtor, referring to Sunrise Homes, LLC as a production builder. As explained by Thunell, Sunrise Homes, LLC builds eight floor plans, including a 1500 and 2200 square foot rambler. The other 6 floor plans are two-story homes. Thunell testified "we sell space" with a tag line of "big homes, small prices and that is really what we push." During questioning by Debtor's counsel, the following exchange occurred:

> Q: Will the product that Sunrise Homes or the affiliate of LEP is building at Oak Springs compete then with the products that Hinesley Family Limited Partnership is building?
>
> A: I do not believe it will for the vast majority of our product lines. Again, as I said, we do offer two ramblers. Those two ramblers could be viewed as competitive. However, we are not competitive with respect to our ramblers. When it comes to price per square foot, I can't build that house any better than Mr. Hinesley.

Thunell understood that the primary purpose of his employment was to provide detailed market information, including not only historic information, but also information on how the real

5

estate market was expected to perform in the future based upon historical data. Based upon the repeated testimony that LEP did not build a product that competed with the products built by Debtor, the Court affirmed its Order approving Debtor's employment of LEP, concluding "Spencer Thunell, Michael Stewart and LEP Advisors, LLC are not direct competitors of the Debtor and are, contrary to first impressions, disinterested persons as that term is defined."

Later in the case, at a hearing held May 16, 2011, Michael Stewart, CEO of LEP and President of Sunrise Homes, reiterated that LEP was a land development company that developed property and sold lots, and its affiliate, Sunrise Homes built homes, including homes in Oak Springs subdivision which is approximately one mile from Debtor's property. One of the primary purposes of Michael Stewart's testimony on May 16, 2011, was to establish whether Debtor's projected costs of construction were reasonable. When talking about the homes Debtor proposed to build under its plan and the projected construction costs, the following exchange took place between Debtor's counsel and Michael Stewart:

> Q. Will those homes compete with your homes in Gallatin Heights?
>
> A. Typically, no. It's, obviously Bozeman is a relatively small market, but there tend to be city buyers and county buyers so I suppose it competes in a way. It would be more of a direct competitor to Oak Springs.
>
> Q. Do they compete with the homes you will be building in Oak Springs?
>
> A. Yes.

Michael Stewart's testimony on May 16, 2011, was troubling in that it was not consistent with the testimony given by Spencer Thunell, Morgan and Charles Hinesley, Sr. on March 1, 2011. Had the Court had such direct testimony regarding a conflict on March 1, 2011, it would not have approved Debtor's employment of Spencer Thunell, Michael Stewart and LEP on

grounds Spencer Thunell, Michael Stewart and LEP were not disinterested persons under 11 U.S.C. § 101(14)(C).

Section 328(c) of the Bankruptcy Code provides the consequences for a finding of a lack of disinterestedness under § 327:

> [T]he court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Debtor is in the business of subdividing raw land and then building homes. Spencer Thunell, Michael Stewart and LEP are in the business of entitling raw land. In addition, Sunrise Homes and Michael Stewart are in the business of building homes and as Michael Stewart conceded on May 16, 2011, are building homes that compete with the homes Debtor builds.

To further complicate this matter, the Debtor was not able to propose a confirmable Chapter 11 plan, and upon request of creditors, the Court entered an Order on October 12, 2011, converting this case to Chapter 7 of the Bankruptcy Code. Given the conversion of this case to Chapter 7, the lack of disinterestedness and given that Spencer Thunell, Michael Stewart and LEP's employment did not ultimately assist the Debtor in securing confirmation of a Chapter 11 plan, the Court exercises its broad discretion and denies approval of the pending fee applications. In accordance with the foregoing, the Court will enter a separate order providing as follows:

**IT IS ORDERED** that approval of the Fee Application for Professional Fees and Costs filed on behalf of Spencer Thunell and Michael Stewart on May 11, 2011, and approval of the Second and Final Fee Application for Professional Fees and Costs filed on behalf of Spencer

7


Thunell and Michael Stewart on July 22, 2011, is DENIED.

BY THE COURT

*/s/ Ralph B. Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana